UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL B. NORFLEET, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 3:17-cv-01232 |
| | )   CHIEF JUDGE CRENSHAW |
| HEATHER ANN RENNER, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Daniel B. Norfleet alleges that Tennessee Probation Officer Heather Renner swore out an affidavit void of any facts to support probable cause for his arrest. Houston County, Tennessee, Commissioner Judy Farris issued the allegedly facially invalid warrant and City of Waverly, Tennessee, officers arrested Norfleet.[1] He spent six months in jail without a hearing before a Houston County Circuit Court judge found the warrant invalid and dismissed it. Norfleet brings this action against Renner, Commissioner Farris, Houston County and its Sheriff's Office, and Houston County Sheriff Kevin Sugg in his individual and official capacity. (Doc. No. 1.)

Before the Court is Farris' Motion for Judgment on the Pleadings (Doc. No. 33) and the Houston County Defendants' Motion to Dismiss (Doc. No. 49).[2] Because the Houston County

---

[1] The Complaint refers to Farris as a "county magistrate." (Doc. No. 1.) Plaintiff's Response to the Motion for Judgment on the Pleadings (Doc. No. 38) refers to Farris as a "county magistrate and judicial commissioner." (Doc. No. 38.) In Tennessee, the difference between a "magistrate" and "judicial commissioner" is only the size of the county in which they serve. Compare Tenn. Code Ann. § 40-1-111(a) with (g) and (h). Based on its county size, Houston County is authorized by statute to utilize "judicial commissioners," not "magistrates." Tenn. Code Ann. § 40-1-111(a). Of course, the statute recognizes that sometimes judicial commissioners will be referred to by their colloquial name as "magistrates." Tenn. Code Ann. § 40-1-106. The Court will refer to Farris by her proper title as a judicial commissioner.

[2] The Court previously granted the City of Waverly officials' unopposed Motion to Dismiss on the grounds that Norfleet's claims against them were time-barred. (Doc. No. 29.) Renner has not appeared and is currently in default (Doc. No. 63), so she also is not a party to the instant motions.

Defendants have filed an Answer (Doc. No. 26), the Court construes their Motion as a Motion for Judgment on the Pleadings. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 n.1 (6th Cir. 1988) (holding that a motion to dismiss filed after the answer "may properly be considered as one for judgment on the pleadings under [Rule] 12(c)"). For the following reasons, Farris' Motion is granted in part and denied in part, and the Houston County Defendants' Motion is granted.

I. Allegations

On January 15, 2015, the Houston County Circuit Court placed Norfleet on probation for six years. (Doc. No. 1 at 3.) One condition of his probation was that he "will not engage in any assaultive, threatening, or intimidating behavior. Nor will [he] participate in any criminal street gang activities as defined in TCA 40-35-121. [He] will not behave in a manner that poses a threat to others or [himself]." (Doc. No. 1 at 4; Doc. No. 1-2 at 1.) On September 7, 2016, Renner signed a Violation of Probation Affidavit (the "Affidavit"), stating only that Norfleet "is a threat to himself at this time." (Doc. No. 1 at 4; Doc. No. 1-2 at 1.) The same day, Farris signed a warrant for Norfleet's arrest based on the Affidavit (the "Warrant"). (Doc. No. 1 at 4; Doc. No. 1-2 at 1.) Waverly Police Department officers subsequently executed the Warrant and arrested Norfleet. Farris denied Norfleet a bond, but instead ordered that he be held until his probation violation hearing. (Doc. No. 1 at 5; Doc. No. 1-2 at 2.) He remained detained at the Houston County Jail until his probation violation hearing on February 7, 2017. (Doc. No. 1 at 5-6.) At the hearing, the Houston County Circuit Court judge dismissed the warrant because it was signed by the county's judicial commissioner, not a circuit judge. (Id. at 6.)

II.   Standard of Review

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings have closed. The "standard of review for entry of judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Rule 12(b)(6)." Jackson v. Heh, 215 F.3d 1326, 2000 WL 761807, at *3 (6th Cir. June 2, 2000) (table). Whether a motion proceeds under Rule 12(c) or 12(b)(6) is merely a function of its timing relative to the defendant's filing of its answer. See Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001) (discussing the standard of review for 12(b)(6) and 12(c) motions) (citing Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999)).

For the purposes of a motion to dismiss under Rule 12(b)(6), the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

III.   Analysis

The Complaint raises four causes of action: (1) a Fourth Amendment unreasonable search and seizure claim; (2) a Fourteenth Amendment violation of due process claim; of (3) state law

claims of negligent hiring, retention, and supervision only against Houston County; and (4) a state law claim of negligent infliction of emotional distress against all defendants. (Doc. No. 1.)

A. Commissioner Farris

Farris moves for judgment on the pleadings based on quasi-judicial immunity (Doc. No. 34 at 4), or alternatively, qualified immunity (Doc. No. 34 at 11).

1. Quasi-Judicial Immunity

Farris argues that she is entitled to quasi-judicial immunity because she was acting in a judicial capacity. (Doc. No. 34 at 4.) Norfleet disagrees because Farris' action of signing the probation violation warrant falls under the limited exception to quasi-judicial immunity for situations in which a judicial actor acts in "clear absence of jurisdiction." (Doc. No. 38 at 5.)

"The immunity of judges for acts within the judicial role is . . . well established." Pierson v. Ray, 386 U.S. 547, 554 (1967). "[J]udicial immunity is an immunity from suit, not just from [the] ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Absolute judicial immunity "has been extended to non-judicial officers who perform 'quasi-judicial' duties." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994) (citing Joseph v. Patterson, 795 F.2d 549, 560 (6th Cir. 1986)). This so-called quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Id. (citing Scruggs v. Moellering, 870 F.2d 376 (7th Cir. 1989)). Tennessee's judicial commissioners are considered an "arm of the judicial officer who is immune" for the purposes of quasi-judicial immunity. Jones v. Harris, 22 F. App'x 520, 521 (6th Cir. 2001).

However, quasi-judicial immunity does not apply when the commissioner's actions were "'non-judicial' in nature or if the [commissioner's] actions are performed without any jurisdiction

4

to do so." Brookings v. Clunk, 389 F.3d 614, 617 (6th Cir. 2004) (citing Pierson, 386 U.S. at 554). Signing a warrant is unquestionably judicial in nature, Ireland v. Tunis, 113 F.3d 1435, 1441 (6th Cir. 1997) (citing Foster v. Walsh, 864 F.2d 416, 417-18 (6th Cir. 1988)), and Norfleet does not argue otherwise. (Doc. No. 38.) However, Farris' action was performed without any jurisdiction to do so.

Whether a commissioner acted without jurisdiction for purposes of quasi-judicial immunity depends on whether the commissioner acted "in the clear absence of jurisdiction," which is not entitled to immunity, or in "excess of jurisdiction," which is entitled to immunity. Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997) (citing Stump v. Sparkman, 435 U.S. 349, 357 n.7 (1978)). The Supreme Court gave an example of the distinction between "absence of jurisdiction" and "excess of jurisdiction":

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump, 435 U.S. at 357 n.7 (citing Bradley v. Fisher, 80 U.S. 335, 352 (1871)). There are two steps in determining whether a judge acted in "clear absence of jurisdiction": (1) determine whether the judge served a court of limited or general jurisdiction; and (2)(a) if the judge served on a court of general jurisdiction, whether there is a statute preventing the court from acting in the contested manner, or (b) if the judge served on a court of limited jurisdiction, whether there is a statute allowing it to act in the contested manner. Therefore, "[o]nly in the absence of *subject matter jurisdiction* are judicial actors devoid of the shield of liability." Stern, 262 F.3d at 607 (quoting Holloway v. Brush, 220 F.3d 767, 773 (6th Cir. 2000) (en banc)) (emphasis in original).

5

Here, Farris acted without any subject matter jurisdiction because when a "defendant has violated the conditions of his probation, the *trial court* has the authority to revoke the probation." State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005) (emphasis added) (citing Tenn. Code Ann. § 40-35-311). Under such circumstances, only the "trial judge shall have the power to cause to be issued under the trial judge's hand a warrant for the arrest of the defendant as in any other criminal case." Tenn. Code Ann. § 40-35-311(a). Because the statute permitting warrants to be issued for probation violations require the warrants to be issued by the "trial judge," Farris had no subject matter jurisdiction whatsoever to sign the Warrant.[3] In other words, in applying the Supreme Court's example from Stump, Farris was more akin to the probate judge acting on a subject matter on which the statute did not permit her to act rather than the criminal judge exceeding her power to act on the subject matter for which she had jurisdiction. Farris acted in "clear absence of jurisdiction" to sign the Warrant and is not entitled to quasi-judicial immunity.

Farris argues that because she has authority to issue arrest warrants, she acted in excess of her jurisdiction rather than in the "clear absence" of her jurisdiction for issuing a probation violation warrant. Her argument flies in the face of the explicit legislative directive in Tennessee Code Annotated § 40-35-311(a). In any case, a judicial commissioner is not a "court," it only has limited jurisdiction conferred by statute. State v. Bush, 626 S.W.2d 470, 473 (Tenn. Crim. App. 1981). The Tennessee statute establishing judicial commissioners' duties delineates those powers depending on the population of the county at the time of the latest federal census. Tenn. Code Ann. § 40-1-111. The Court takes judicial notice that at the last federal census, on April 1, 2010, Houston County had a population of 8,426. United States Census Bureau: QuickFacts, Houston County,

---

[3] Farris argues that because there is no controlling Tennessee case that holds that judicial commissioners cannot sign probation violation warrants, it is not clearly established. However, it is more likely that there are no published Tennessee cases on this issue because the statute, in the Attorney General's words, is "clear." Tenn. Op. Atty. Gen. No. 04-054 (Mar. 26, 2004).

Tennessee, available at www.census.gov/quickfacts/fact/table/houstoncounty tennessee,tn/PST045217. Tennessee Code Annotated § 40-1-111(a)(1)(A) applies to counties "having a population of less than two hundred thousand." Judicial commissioners of these counties have the power to issue search warrants "and felony arrest warrants upon a finding of probable cause and pursuant to requests from on-duty law enforcement officers and in accordance with the procedures outlined in chapters 5 and 6 of this title." Id. at (a)(1)(A)(i). Violations of probation are not felonies and do not fall within Farris' limited jurisdiction conferred by statute. Tenn. Code Ann. § 40-35-311 (probation violation statute). Farris is not entitled to absolute immunity.

2. Qualified Immunity

Farris alternatively argues that she is entitled to qualified immunity for two reasons: (1) it was objectively reasonable to believe she had subject matter jurisdiction to sign the warrant; and (2) it was objectively reasonable for her to believe that the Affidavit contained sufficient facts to support a finding of probable cause. (Doc. No. 34 at 12-13.) Again, her argument must be rejected based on established precedent.

The Supreme Court set forth the standard for analyzing whether a government official is entitled to qualified immunity:

> In [Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. Anderson, at 640, 107 S.Ct. 3034.

Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.

Here, Norfleet alleges that Farris violated his clearly established rights under the Fourth Amendment to the United States Constitution by issuing a warrant for his arrest and denying bail. (Doc. No. 1 at 6.) Norfleet further alleges that Farris violated his procedural and substantive due process rights, presumably under the Fourteenth Amendment, although it is unclear, by illegally issuing the probation violation warrant and denying bail. (Doc. No. 1 at 9.)

    a. Fourth Amendment

"[I]t is well established that any arrest without probable cause violates the Fourth Amendment." Crockett v. Cumberland Coll., 316 F.3d 571, 580 (6th Cir. 2003) (citing Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)). For the judicial commissioner to have probable cause to issue a warrant, there must be "facts and circumstances within the [commissioner's] knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). "The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of facts and circumstances within [the commissioner's] knowledge at the time of an arrest.'" Id. (quoting Estate of Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999)).

Here, the Court is evaluating a Motion for Judgment on the Pleadings, so it relies on the information in the pleadings. Ashcroft, 556 U.S. at 677. The Complaint does not indicate that Farris relied on any information outside of Renner's Affidavit. (Doc. No. 1 at 5.) Further, Tennessee law requires that all information upon which a judicial commissioner relies be reduced

8

to writing. Tenn. Code Ann. § 40-5-105. In support of the assertion that Norfleet violated his term of probation that he "will not behave in a manner that poses a threat to others or [himself,]" Renner's Affidavit stated in full, "Subject is a threat to himself at this time." (Doc. No. 1-2 at 1.) Farris' Warrant duplicated that averment. (Id.)

The Warrant only recited the applicable probation condition that Norfleet violated, and was void of any facts regarding how he violated that condition. This situation is similar to Webb v. Greene County Sheriff's Office, 494 F. Supp. 2d 779 (S.D. Oh. 2007), in which a detective swore to an affidavit reciting the elements of receiving stolen property and theft and that the defendant met those elements, but did not explain how the defendant met those elements. 494 F. Supp. 2d at 789 (citing Whiteley v. Warden, Wy. State Penitentiary, 401 U.S. 560, 564-65 (1971)). The court held that the warrant was "facially invalid" because it only included a "bare bones" recitation of facts. Id. at 792. The Warrant here is similarly a "bare bones" warrant, relying not even a "bare bones" affidavit. Taking the pleadings in the light most favorable to Norfleet, no reasonable person in the position of Farris would have believed probable cause existed to arrest Norfleet. See Peffer v. Stephens, 880 F.3d 256. 263-64 (6th Cir. 2018) (holding that the key inquiry is whether a jury could possibly make a 'reasonable determination' that probable cause existed) (quoting Yancey v. Carroll Cty., 876 F.2d 1238, 1243 (6th Cir. 1989)), pet. for cert. filed, No. 17-1587 (S. Ct. May 23, 2018). Norfleet's arrest pursuant to the invalid warrant violated his clearly established Fourth Amendment rights.

b. Fourteenth Amendment

Farris does not mention Norfleet's Fourteenth Amendment claim in her qualified immunity arguments. (Doc. No. 34 at 11-13.) However, there is no cognizable Fourteenth Amendment claim for pretrial seizure and detention. See Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (holding that

claims challenging pretrial seizure and detention should be brought under the Fourth Amendment). Accordingly, this claim is dismissed. See Thomas v. Noder-Love, 621 F. App'x 825, 833 (6th Cir. 2015) (affirming the district court's dismissal of non-moving parties when the facts and law supporting dismissal were the same as those of the moving defendants).

    3. State Law Claim Against Farris

Norfleet brings a negligent infliction of emotional distress claim against Farris. (Doc. No. 1.) Farris moves to dismiss this claim because Houston County is immune under Tennessee Code Annotated § 39-20-205. (Doc. No. 34 at 14.) Farris further argues that under Tennessee Code Annotated § 39-20-310(b), if Houston County is immune, Farris, its employee, is also immune. (Doc. No. 34 at 14.) Norfleet does not respond to this argument, and therefore does not oppose dismissal of this claim. (Doc. No. 38); M.D. Tenn. L.R. 7.01(b) (failure to respond to a motion indicates no opposition to that motion). Accordingly, the negligent infliction of emotional distress claim against Farris is dismissed.

    B. Houston County Defendants

Sugg seeks to dismiss the claims against him because Norfleet does not allege any constitutional violation against him in his individual capacity. (Doc. No. 50 at 5.) The Houston County Sheriff's Office seeks to dismiss the claims against it because it is not a separate entity from Houston County (Doc. No. 50 at 6.) Houston County seeks dismissal of the federal claims because it does not have an unconstitutional policy or custom that caused any deprivation of rights (Doc. No. 50 at 6-11) and the state law claims because it is immune. (Doc. No. 50 at 11-17.) The Court will consider the claims against Houston County, the Houston County Sheriff's Office, and the official capacity claims against Sugg all as claims against Houston County. See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a suit against the police department or an

individual in his or her official capacity is treated as a suit against the county) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 68 (1989)).

The Complaint only asserts official capacity claims against Sugg. The only allegation against Sugg is that he is "the policymaker for the Houston County Jail and creates [ ] policy procedures and practices [sic] employed at the jail and by the employee jailers." (Doc. No. 1 at 8.) Norfleet alleges that no intake officer reviewed the facially invalid warrant (<u>id.</u> at 7), and the Sheriff's Office should have had a policy requiring the intake officers to review warrants of those they accept into the jail (<u>id.</u> at 8).

The Sixth Circuit has addressed the difference between an individual and official capacity claim:

> In a case such as this, where the supervisor is also the policymaker, an individual-capacity claim may appear indistinguishable from an official-capacity or municipal claim, but these failure-to-train claims turn on two different legal principles. For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have "'encouraged the specific incident of misconduct or in some other way directly participated in it.'" <u>Phillips v. Roane Cty.</u>, 534 F.3d 531, 543 (6th Cir. 2008) (quoting <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" <u>Id.</u> (quoting <u>Shehee</u>, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. <u>Gregory v. City of Louisville</u>, 444 F.3d 725, 751 (6th Cir. 2006).

The individual capacity claim is contrasted with a failure-to-train or supervise claim against the municipality, in which a plaintiff would have to establish "that the municipality, though its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, or 2) that the constitutional violation alleged was a patently highly predictable consequence of inadequate training." <u>Id.</u> (quoting <u>Bd. of Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 407-09 (1997)) (internal quotations omitted).

Here, the claim is that the Houston County jail did not have a policy in place to prevent Norfleet's illegal detention, and Sugg, as the policymaker, should have enacted such a policy. This is a "mere failure to act" by Sugg, which is not cognizable as an individual capacity claim. Gregory, 444 F.3d at 751. Instead, the claim is against the municipality, which does "not require direct participation in or encouragement of the specific [actor]; rather, [it] may be premised on a failure to act." Essex, 518 F. App'x at 355 (citing Heyerman v. Cty. of Calhoun, 680 F.3d 642, 648 (6th Cir. 2012)). Therefore, the Complaint does not allege an individual capacity claim against Sugg.

1. Unconstitutional Policy at the Houston County Jail

Municipalities are "persons" for the purposes of § 1983 liability. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978). However, municipalities cannot be held liable pursuant to § 1983 under a theory of respondeat superior. Id. at 691; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. The plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. Without an underlying constitutional violation, the municipality cannot be liable. Blackmore v. Kalamazoo, 390 F.3d 890, 900 (6th Cir. 2004) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Therefore, the Court first determines whether there is an underlying constitutional violation committed by Houston County agents.

Norfleet alleges that the Houston County Jail intake officers should not have accepted Norfleet at the jail because the City of Waverly officers arrested him while executing a facially

invalid warrant. Because the Waverly police officers were the arresting officers, the Houston County intake officers could only be liable for a Fourth Amendment continued detention, or "malicious prosecution," claim. Gregory, 444 F.3d at 749. To state a claim of malicious prosecution, Norfleet must allege: (1) "a criminal prosecution was initiated against the plaintiff and [ ] the defendant made, influenced, or participated in the decision to prosecute"; (2) there "was a lack of probable cause for the criminal prosecution"; (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure"; and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010).

No Houston County officer "made, influenced, or participated" in the decision to prosecute Norfleet. To make, influence, or participate in the decision to prosecute, the officer must be "responsible for his continued, unreasonable pretrial detention." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100 (1st Cir. 2013) (citing Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). The United States Courts of Appeals are in agreement that to be "responsible for" a pretrial detention, an officer must generally "(1) 'lie[ ] to or [mislead] the prosecutors'; (2) 'fail[ ] to disclose exculpatory evidence'; or (3) 'unduly pressure[ ] the prosecutor to seek the indictment.'" Id. (compiling cases from the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits) (quoting Evans, 703 F.3d at 647-48); see Sykes, 625 F.3d at 308-09 (discussing the elements of a malicious prosecution claim). The Houston County intake officers' actions did not come near meeting this requirement. Norfleet only alleges that the intake officers accepted him into the jail after different officers arrested him when executing an invalid warrant. However, he cites no case that holds that every officer who accepts custody of him must separately evaluate a judicial commissioner's finding of probable cause. The same is not true for a non-arresting officer

like the Houston County intake officers. Because Norfleet does not establish that the Houston County intake officers participated in his prosecution, they did not violate his constitutional rights. Without an underlying constitutional violation by its officers, Houston County cannot be liable.[4] Blackmore, 390 F.3d at 900 (citing Heller, 475 U.S. at 799). Accordingly, the claim against Houston County for having an unconstitutional policy regarding its intake officers is dismissed.

2. Failure to Train

Norfleet also argues that he properly asserts a failure to train claim against Houston County. (Doc. No. 54 at 9.) He argues that Houston County failed to train judicial commissioners that they should reject facially invalid warrants. (Id.) He relies on his allegation that "Houston County did not provide any training of any nature that would equip Defendant Judy Farris with the knowledge required to carry out the magistrate function." (Id. (citing Doc. No. 1 at 10)).

To sufficiently plead a failure to train claim, a plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Regets v. City of Plymouth, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)). To establish deliberate indifference, "a plaintiff must show prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that training or supervision was deficient and likely to cause injury." DeSoto v. Bd. of Parks and Recreation, 64 F. Supp. 3d 1070, 1085 (M.D. Tenn. 2014) (Trauger, J.) (citing Marcilis v. Twp. of Redford, 693 F.3d 589, 605 (6th Cir. 2012)). In DeSoto, the court granted the defendant's motion

---

[4] The lack of an underlying constitutional claim against the intake officers would also be fatal to any supervisory liability claim against Sugg in his individual capacity, if it were properly alleged. Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (quoting Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999)).

to dismiss when the plaintiff did not plead sufficient facts to show prior instances of unconstitutional conduct. Id. at 1085-86. Here, Norfleet does not allege any prior instances of unconstitutional conduct. There is not even a conclusory allegation that Houston County was deliberately indifferent. Accordingly, the failure to train claim is dismissed.

3. Fourteenth Amendment

The Houston County Defendants move to dismiss the Fourteenth Amendment claims because the Supreme Court held that all pretrial detention search and seizure claims are properly brought under the Fourth Amendment, not the Fourteenth Amendment. (Doc. No. 50 at 9-10 (citing Gerstein, 420 U.S. at 111). Norfleet does not disagree that the holding in Gerstein forecloses his Fourteenth Amendment claims, but asks the Court to rely on the dissent in Gerstein to hold that there may be other Fourteenth Amendment pretrial detention claims. (Doc. No. 54 at 8-9.) The Court cannot rely on a dissent over a binding United States Supreme Court holding. Hadix v. Johnson, 182 F.3d 400, 405-06 (6th Cir. 1999). Accordingly, the Fourteenth Amendment claims are dismissed.

4. State Law Claims Against Houston County

Last, the Houston County Defendants argue that Norfleet's state law claims should be dismissed. (Doc. No. 50 at 11-16.) Norfleet brings both a failure to train state law claim and a negligent infliction of emotional stress claim against Houston County. (Doc. No. 1.) The state law claims allege that Houston County had a duty to train Farris, and its failure to do so caused Norfleet's unjustified pretrial detention and inflicted emotional distress. (Doc. No. 1 at 10-11; Doc. No. 54 at 9-12.) However, "[c]ounties have no duty to train magistrates. . . . The imposition of such a duty to train would do violence to Tennessee's fundamental doctrine of separation of powers." Frost v. Hamilton Cty., TN, No. 1:04-cv-75, 2006 WL 228881, at *7 (E.D. Tenn. Jan.

30, 2006) (citing Tenn. Const. art. II §§ 1-2). In Frost, the plaintiff brought a claim against Hamilton County, Tennessee, for failing to train its judicial commissioner with respect to setting bond amounts. Id. at *3. The court dismissed the claim, holding that "regardless of whether plaintiff can show a constitutional violation by [the judicial commissioner], a failure to train claim against Hamilton County based on [the judicial commissioner's actions] is improper." Id. at *7. Instead, the legislature has imposed certain requirements on the judicial commissioners to ensure that they obtain training by other judges. Tenn. Code Ann. § 40-1-111(f) (annual training requirements for judicial commissioners). For example, judicial commissioners must take ten continuing education courses sponsored or approved by the Judicial Commissioners Association of Tennessee. Id. at (f)(1). It is not Houston County's duty to train Farris, but rather it is Farris' duty to ensure that she complies with the statute. Id. Because there is no duty to train judicial commissioners, the state law claims for failure to train and negligent infliction of emotional distress against Houston County are dismissed.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE